FILED

SEP 2 8 2017

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _D.C._
DEP CLK

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information Associated With Specified
Instagram User Accounts, Stored at Premises
Controlled by Instagram, LLC

)
)
)
)
)
)

Case No. 4:17 mj 1176-RN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g), 924(c) | Firearm by Felon; Possession of Firearm in Furtherance of Drug Trafficking Crime |
| 21 U.S.C. § 846 | Conspiracy to Distrib. and Poss. with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: __12/15/2017__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Michael Horn, ATF
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means and was placed under oath.

Date: September 28, 2017

City & State: Raleigh, North Carolina

Robert T. Numbers, II United States Magistrate Judge



FILED

SEP 2 8 2017

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ ) C C
_____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SPECIFIED INSTAGRAM USER ACCOUNTS, STORED AT PREMISES CONTROLLED BY INSTAGRAM, LLC** | Case No. 4:17 mJ1176_ᴸᴺ<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Horn, being first duly sworn, do hereby depose and
state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for
a search warrant for information associated with certain specified
Instagram accounts that is stored at premises owned, maintained,
controlled, or operated by Instagram, LLC. ("Instagram"), a
social-networking company owned by Facebook, Inc. ("Facebook") and
headquartered in San Francisco, California.    The information to
be searched is described in the following paragraphs and in
Attachment A.  This affidavit is made in support of an application
for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and
2703(c)(1)(A) to require Instagram to disclose to the government
records and other information in its possession, pertaining to the
subscriber or customer associated with the user accounts described
in Attachment A (the "Subject Accounts").

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been since 2012. Prior to my assignment as a Special Agent with ATF, I was an ATF Task Force Officer while employed as a Detective with the Miami Gardens Police Department. I was employed with that department for five years and was also employed as a police officer with the Lauderhill Police Department for four years. I transferred from the Miami Field Division to the Charlotte Division, Wilmington Field Office on July 9, 2017. During my tenure as a Special Agent and Task Force Officer, I have participated in several federal investigations related to violations of the Controlled Substances Act and federal firearm laws. I have also been involved in the investigation of several criminal gangs. These investigations have included search warrants, physical and electronic surveillance, and arrests of several firearms violators, narcotics traffickers and gang members. I am thus a "federal law enforcement officer" as defined by Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The information set forth in this affidavit was obtained during the course of my employment with the ATF, personal observations, through the statement of witnesses, information supplied by other local and

2

Federal law enforcement officers, and through other investigative activity.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841, distribution and possession with the intent to distribute heroin; 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute heroin; 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime; 18 U.S.C. § 922(g), possession of a firearm by a felon; and 18 U.S.C. §§ 1956(a)(1), 1956(h), and 1957, conspiracy to launder monetary instruments and laundering of monetary instruments, may have been committed by Mario Correllus BARGNEARE, Willie Frank James AHERN, Roy James NOLON, and Calvin WILSON. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## BACKGROUND REGARDING INSTAGRAM

5. From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

6. Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create

3

their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

7.    Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter.    When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information.  A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.    In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

8.    Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

9.    Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile.

4

This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

10. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

11. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

12. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

13. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via

5

Instagram Direct does not appear in a user's feed, search history, or profile.

14.    Users on Instagram may also search Instagram for other users or particular types of photos or other content.

15.    For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

16.    Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

17.    Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

6

18. Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

19. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

20. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the

7

account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

## PROBABLE CAUSE

21. In May 2015, ATF began working with the New Bern, North Carolina Police Department to investigate a series of gang-related

8

shootings and homicides that began at the end of 2014. During the course of the investigation it was learned that the United Blood Nation, namely a Nine (9) Trey set, was involved in bringing multi-kilogram quantities of heroin into the Eastern District of North Carolina from the Queens area of New York City. ATF agents were able to identify an organized criminal enterprise operating within New Bern, North Carolina for almost a decade. During interviews, it was learned that this DTO has been involved in the trafficking of heroin, cocaine, and marijuana dating back as far as 2010, and is led by Calvin WILSON. Members of this DTO are involved in a variety of criminal activities. Some members are involved in the purchasing and transporting of multi-kilogram shipments of narcotics. Other members are involved in the distribution of narcotics on a regional level. Still other members are involved in the local distribution of narcotics. Some members are known to carry firearms and have been implicated in numerous shootings and/or murders. This DTO supplies a number of narcotics users, many of whom are known to be responsible for breaking and entering violations, during which firearms have been stolen. The narcotics users then capitalize on their connection to this organization to sell/trade firearms for narcotics. Over the course of this investigation, several stolen firearms have been recovered and subsequently linked to shooting incidents being investigated by police.

9

22.   During the course of this investigation agents have conducted numerous interviews with people familiar with the DTO. Through these interviews, and other investigative techniques, agents have identified sources of supply used by the DTO as multi-kilogram level drug traffickers based in Queens, New York. Agents have also learned the organization is responsible for distributing significant amounts of cocaine and heroin in Jacksonville, North Carolina, Pamlico County, North Carolina, and other locations in the Eastern District of North Carolina. Additionally, agents have identified several subjects WILSON uses to sell drugs for him as well as subjects supplied with drugs by WILSON.

23.   During the course of the investigation, agents have conducted numerous controlled purchases of heroin from members of the DTO, including Mario Correllus BARGNEARE, Willie Frank James AHERN, and Roy James NOLON. In many of those controlled purchases from BARGNEARE, BARGNEARE is seen leaving from and returning to a residence in which WILSON lives in New Bern, North Carolina.

24.   The organization consists of several affiliated groups whose names include: "9 Trey Bloods" "Humble Gang", and "scale gang". Based on my investigation, including review of subject tattoos and social media activity, I have learned that a signature trait of the organization is that its numerous members and associates claim affiliation with "The Bloods" national criminal network. According to the Department of Justice's Organized Crime

10

and Gang Section "[t]he Bloods are a national association of structured and unstructured gangs that have adopted a single gang culture." See https://dojnet.doj.gov/criminal/ocgs/gangs/street-gangs.html. Further, associates of the organization have been implicated as participants in multiple assaults, firearm offenses, armed robberies, shootings and murders.

25.   I know from my training and experience that Blood gang members communicate through Facebook and Instagram with other members throughout the United States. Gang members, and members of the Bloods in particular, often post indicia of membership and association with the gang on their Facebook and Instagram accounts, including, but not limited to, photographs of clothing bearing gang insignias or containing gang colors; photographs of members posing together; photographs showing gang-specific "hand signs;" and photographs depicting themselves or other Bloods members displaying Bloods related tattoos. Bloods members also post photographs of gang symbols, weapons, narcotics and gang graffiti on their accounts. As described below, the subscribers or customers associated with the user IDs described in Attachment A utilize Instagram to communicate with one another and to post messages and photographs that evidence their membership in and support of the DTO.

26.   On July 26, 2017, the Honorable James C. Dever III, Chief United States District Judge, Eastern District of North Carolina,

11

issued an Order authorizing a Title III wiretap for the interception of wire and electronic communications over a telephone known to be used by BARGNEARE. See 4:17-MJ-1124-D. On August 17, 2017, Chief Judge Dever issued an Order authorizing the continued interception of wire and electronic communications from BARGNEARE's telephone and authorizing the interception of wire communications over a telephone known to the used by WILSON. See id.

27. Investigators have intercepted communications over these wiretaps that further establish that WILSON is operating the DTO in order to sell heroin in the Eastern District of North Carolina and elsewhere, and that he utilizes numerous individuals to sell heroin on his behalf, namely, BARGNEARE and NOLON. In addition, surveillance conducted in connection with the wiretaps has established that AHERN interacts routinely with WILSON and is likely being supplied by WILSON's New York source of supply.

28. On August 2, 2017, investigators observed activity that they believe was associated with a re-supply of heroin to the DTO. First, investigators watched video surveillance of the residence of WILSON. Investigators observed AHERN arrive, enter the home for a short period of time, then exit the residence. Later on in the day investigators obtained surveillance on WILSON and BARGNEARE while driving to Jacksonville, NC. BARGNEARE, WILSON and an Unknown Male (UM) entered a Chili's restaurant and met with another DTO

12

member, Corey HOWARD. HOWARD sat a separate table while WILSON, BARGENARE, and the UM sat and ate food. During the course of the hour, HOWARD entered the bathroom, then WILSON entered the restroom very shortly after. WILSON, BARGNEARE, and UM then exited the restaurant, and HOWARD entered the restroom again. Based on training and experience, I know that narcotics traffickers will conduct a "drop" exchange money for narcotics at a public location like the Chili's to avoid law enforcement detection.

29.  Between January 2017 and the present, investigators conducted several independent internet social media queries into public sites such as Facebook.com and Instagram.  Through these searches, I located several accounts associated with members and associates of the DTO displaying illegal narcotics and firearms, along with demonstrating associational gang hand signs and wearing of the Blood gang colors (red/black).

30.  A preservation request was made on April 3, 2017 in order to preserve all records related to Instagram accounts connected to the following individuals (the "Subject Accounts"):

    a. Mario BARGNEARE

        i.  Instagram: @DEGENIERO5

    b. Willie AHERN

        i.  Instagram: @WIILEDYNOMITE

    c. Roy NOLON

        i.  Instagram: @R_O_YSTONE

13

d. Calvin WILSON

  i. Instagram: @RESPECTTHESHOOTERFIRST

### Mario Correllus BARGNEARE

31. As described above, agents have been investigating BARGNEARE since at least late 2016 in connection with his dealing heroin on behalf of the WILSON DTO. As a part of that investigation, agents have conducted numerous controlled purchases of heroin, totaling more than 100 grams of heroin. In addition, agents have been intercepting communications over the Title III wiretap of BARGNEARE's telephone from July 27, 2017 to the present, which confirm that BARGNEARE sells heroin, utilizes and distributes firearms, and transports money on behalf of the DTO nearly every day.

32. Through open source searches, law enforcement identified an Instagram account operated by BARGNEARE. The user name associated with the account is "@DEGENIERO5." I know that BARGNEARE often goes by the street name "Rio" (short for Mario), and that "DEGENIERO" likely is a call back to the city of Rio de Janeiro in Brazil. The Instagram account contains several photographs with BARGNEARE wearing high-end expensive jewelry believed to be purchased from proceeds from illegal narcotics sales. The investigation has uncovered no legitimate source of income for BARGNEARE. BARGNEARE also displays several photographs of him wearing red and black clothing and flashing gang hand

14



symbols all related to the Bloods street gang. The most recent photo depicting the Blood street gang with jewelry is posted to BARGNEARE's Instagram account on April 23, 2017, with the caption "BLESSED UP" and the emoticon 👌 . I know that the emoticon 👌 is commonly used to symbolize a hand signal for a letter "B" for "Bloods."

### Calvin WILSON

33. As described above, agents have been investigating WILSON since at least May 2015 in connection with his operation of the DTO. As a part of that investigation, agents have conducted numerous controlled purchases of heroin from individuals selling on WILSON's behalf, including BARGNEARE and NOLON. In addition, agents have been intercepting communications over the Title III wiretap of BARGNEARE and WILSON's telephones from July 27, 2017 to the present, which confirm that WILSON manages the operations of the DTO, ordering BARGNEARE to come to WILSON's house in order to sell heroin and distributing heroin to NOLON directly.

34. Through open source searches, law enforcement identified an Instagram account operated by WILSON. The user name associated with the account is "@RESPECTTHESHOOTERFIRST," and it contains several photographs with him wearing high-end expensive jewelry believed to be purchased from proceeds from illegal narcotics sales. WILSON displays several photographs of him wearing red and

black clothing and flashing gang hand symbols all related to the Bloods street gang. WILSON appears in several photographs in the company of members of the conspiracy and other Blood street gang members, including Taurean LECRAFT, Dwayne STALLINGS, AHERN, and Ontario WEBB. WEBB has been intercepted on the Title III wiretap discussing the DTO and/or its illegal activities. The most recent Instagram post I have found is from February 26, 2017, which was posted by WILSON linking AHERN'S account in the photo with the Blood gang sign emoticon 👌 . In the photograph WILSON can be seen displaying a Blood street gang hand sign.

### Willie Frank James AHERN

35. Investigators with the Pamlico County Sheriff's Office and New Bern Police Department have been investigating AHERN's role within the DTO for some time. In connection with that investigation, agents have conducted several controlled purchases of heroin from AHERN and have executed a search warrant on his residence in which they located US currency in the amount of $14,075, two empty wrappers which previously contained two kilograms of cocaine, a small amount of marijuana, blood gang literature.

36. Most recently, on July 31, 2017, investigators with the Pamlico County Sheriff's Office conducted a controlled purchase of a quantity of heroin from AHERN. Investigators were conducting

surveillance during this controlled purchase of heroin and were able to observe AHERN arrive. The encounter was captured on a digital audio and video recorder worn by the confidential source, and investigators were able to positively identify AHERN from the video. The suspected heroin field tested positive for the presence of heroin.

37. Through open source searches, law enforcement identified an Instagram account operated by AHERN. The user name associated with the account is "@WIILEDYNOMITE," and it contains several photographs with AHERN wearing high-end expensive jewelry believed to be purchased from proceeds from illegal narcotics sales. AHERN displays several photographs of him wearing red and black clothing and flashing gang hand symbols all related to the Bloods street gang. AHERN also appears in several photographs in the company of members of the conspiracy and other Blood street gang members, including STALLINGS, Taurean LECRAFT, Ontario WEBB, and Damien STALLINGS. WEBB has been intercepted on the Title III wiretap discussing the DTO and/or its illegal activities.

38. Due to privacy settings on AHERN's Instagram page, investigators are unable to see recent posts. However, investigators are able to see the above-described photos through other co-conspirators Instagram pages with AHERN's account linked. The most recent post I have found was from February 26, 2017, which

17

was posted by WILSON, linking AHERN'S account in the photo with the Blood gang sign emoticon.

### Roy James NOLON

39. NOLON is an identified member of the WILSON DTO that agents have been investigating since approximately October 2013. In connection with that investigation, agents have conducted three controlled purchases of quantity amounts of heroin from NOLON on October 3, 2016, October 5, 2017 and November 28, 2017. Investigators were able to positively identify NOLON from the video recordings of the controlled purchases.

40. In addition, NOLON has been intercepted on the Title III wiretaps ordering quantity amounts of heroin from WILSON directly. For example, on August 23, 2017, NOLON called WILSON and stated "I need two of them." Investigators know that when NOLON orders "two of them" he is speaking of 2 gram of heroin.

41. Through open source searches, law enforcement identified an Instagram account operated by NOLON. The user name associated with the account is @R_O_YSTONE, and it contains several photographs with him wearing high-end expensive jewelry believed to be purchased from proceeds from illegal narcotics sales. NOLON displays several photographs of him wearing red and black clothing and flashing gang hand symbols all related to the Bloods street gang. In addition, NOLON appears in several photographs in the company of members of the conspiracy and other Blood street gang

18

members, including Rodney PENDER, WILSON, and Alshon STILLEY. NOLON frequently has photographs of a tattoo he has on his forearm, which states "humble"/"NLMB", which refers to the Humble Gang sub-set of the Blood street gang and the common phrase "never leave my brother." NOLON continuously posts pictures and videos of himself and others portraying the Blood street gangs signs and colors, with the most recent being August 25, 2017.

42. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the Subject Accounts, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times. Based on the foregoing, I believe that the Instagram accounts of the above-listed individuals are likely to have further evidence of their involvement in illegal drug trafficking, firearm possession and distribution, and money laundering.

43. On September 8, 2017, the Honorable James E. Gates, United States Magistrate Judge, issued an order authorizing the search of Facebook and Instagram records associated with these and other individuals. See 4:17-mj-1159-JG. The search warrant was

19

served on Facebook shortly thereafter. However, on September 11, 2017, investigators received a communication from the Facebook Law Enforcement Response Team, which advised that, while they would prepare a response to the warrant for Facebook accounts requested, they would not honor the order as it related to Instagram records. The communication requested that the Government submit a new search warrant addressed to Instagram. This affidavit is submitted in support of that search warrant.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service or execution of the attached search warrant.

## AUTHORIZATION REQUEST

45. Based on the forgoing, I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

46. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711 and 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of North Carolina is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

47. It is further requested that, pursuant to 18 U.S.C. § 3103a(b)(3) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until December 15, 2017. The period of delayed notice for the Title III wiretap 4:17-MJ-1124-D is set to expire on December 15, 2017. Because the investigations underlying the Title III wiretap and the search warrant in the above-captioned matter are so closely intertwined, service of notice at this time could adversely affect law enforcement officers' abilities to effectively continue their investigation, could result in the flight of known and unknown individuals as well as those targeted for investigation prior to the issuance of any future indictment(s), could result in destruction or tampering with

21



evidence, or could endanger the life or physical safety of individuals related to this investigation. See 18 U.S.C. § 3103a(b)(1), incorporating 18 U.S.C. § 2705(a)(B)(2). Giving notice of the above-captioned search warrant before that time would have the aforementioned adverse effects upon that wiretap and any other potential wiretap that the Government will apply for with respect to the DTO. There is reasonable necessity for the use of the technique described above and the facts of the case justify a longer delay, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2) & (c).

48. As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

49. Because the warrant will be served on Instagram which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

50. I also respectfully request that this Affidavit be filed under seal. This investigation is currently ongoing and the details

in this Affidavit, if disclosed prior to the completion of the
investigation, could compromise future undercover operations and
alert the subjects, both known and unknown, to the existence of
the investigation.

Respectfully submitted,

MICHAEL HORN
Special Agent, ATF

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via
reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: September 28, 2017

Robert T. Numbers II

Robert T. Numbers, II
United States Magistrate Judge



**ATTACHMENT A**

**Property to Be Searched**

     This warrant applies to information associated with the following Instagram user accounts, which are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a social-networking company owned by Facebook, Inc. and headquartered in San Francisco, California:

       a. Mario BARGNEARE
          i. Instagram: @DEGENIERO5
       b. Willie AHERN
          i. Instagram: @WIILEDYNOMITE
       c. Roy NOLON
          i. Instagram: @R_O_YSTONE
       d. Calvin WILSON
          i. Instagram: @RESPECTTHESHOOTERFIRST

## ATTACHMENT B

### Particular Things to be Seized

### I.   Information to be disclosed by Instagram

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC ("Instagram"), including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for each user account listed in Attachment A:

    (a)   All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

    (b)   All past and current usernames associated with the account;

    (c)   The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

    (d)   All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

    (e)   All information regarding the particular device or devices used to login to or access the account, including

2



all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

(f) All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

(g) All communications or other messages sent or received by the account;

(h) All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

(i) All photographs and images in the user gallery for the account;

(j) All location data associated with the account, including geotags;

(k) All data and information that has been deleted by the user;

(l) A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

(m) A list of all users that the account has "unfollowed" or blocked;

(n) All privacy and account settings;

(o) All records of Instagram searches performed by the account, including all past searches saved by the account;

3

Case 4:17-mj-01176-RN   Document 1   Filed 09/28/17   Page 27 of 30

(p) All information about connections between the account and third-party websites and applications; and,

(q) All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

It is further requested that Instagram furnish the information listed above in the following digital file formats: Microsoft Word (".doc"), Microsoft Excel (".xls"), and Portable Document Format (.pdf").

## II. Information to be searched for and seized by the government

This warrant authorizes (i) the search by the Government of the property identified in Attachment A only for only the following, and (ii) authorizes the seizure by the Government of the items listed below only to the extent that they constitute evidence of the subject violations; any item constituting contraband due to the subject violations; fruits or instrumentalities of the subject violations; any property designed for use, intended for use, or used in committing the subject violations; or any other item whose possession is illegal due to the subject violations. Specifically, the information sought relates to violations of 21 U.S.C. §§ 841 and 846; 18 U.S.C. §§ 922(g) and 924(c); and 18 U.S.C. §§ 1956(a)(1), 1956(h), and 1957, those violations involving Mario Correllus BARGNEARE, Willie Frank James AHERN, Roy James NOLON, and Calvin WILSON, and occurring on or after May 1, 2015, including, for each user account identified

4

on Attachment A, information pertaining to the following matters:

(a) Communications, including but not limited to wall posts, tags, comments, and private messages, discussing (1) drug trafficking or traveling between North Carolina, New York, and/or other States for the distribution and delivery of illegal drugs, (2) the possession or use of firearms in furtherance of drug trafficking, (3) the possession by or distribution to felons of firearms, and (4) purchasing items using proceeds of drug trafficking and/or other evidence of laundering drug proceeds;

(b) Images, photographs, and/or videos related to drug trafficking, the possession or distribution of firearms, and/or laundering drug proceeds;

(c) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owners;

(d) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(f) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, firearm possession and/or distribution, and/or money laundering, including records that help reveal their whereabouts.

5

### III. 18 U.S.C. § 3103a(b)(2)

Notwithstanding any other provision of this warrant, it prohibits the seizure of the following, pursuant to 18 U.S.C. § 3108a(b)(2): any tangible property; and any wire or electronic communication as defined in 18 U.S.C. § 2510.

This warrant authorizes the seizure of stored wire and electronic information because such seizure is reasonably necessary pursuant to 18 U.S.C. § 3103a(b)(2).

6

